EXCHANGE & DEPOSIT BANK and COMMERCIAL BANK OF KNOXVILLE *v.* C. W. BRADLEY *et al.*

AND

BANK OF BRISTOL *v.* C. W. BRADLEY *et al.*

1. CHANCERY PLEADINGS AND PRACTICE. *Co-defendant. New parties.* A defendant to a bill in chancery cannot object to the action of the court in setting aside a *pro confesso* order against a co-defendant, and, with the assent of the complainant, making new parties defendant.

2. CO-TENANTS. *Lien.* If the tenants in common or co-owners of property sell their shares severally, each has only a lien on his share for his part of the purchase money.

3. ASSIGNMENTS. *Liens. Vendor and vendee.* Under a contract for the sale and purchase of land, in which it is agreed that the purchaser had advanced money to the vendor and taken security therefor in the shape of assignments of debts paid by the advances with their liens and a trust assignment of the vendor's interest in the property, with an express stipulation that the vendee may become the purchaser of the property by a given day, in which event the advances are to be credited upon and deducted from the gross amount of the purchase money, and the vendee elects to take the property, the assignments and liens and trust deed are thereby extinguished, and no creditor of the vendee could, in the absence of contract, acquire any right to the debts so assigned and their liens.

4. LIEN. *Cannot be revived after payment.* If a debt, which is a lien on realty, be once paid by the debtor, the lien cannot afterwards be revived to the prejudice of third persons by the creditor and debtor.

5. VENDOR AND VENDEE. *Contract for sale of land. Election.* Where a contract for the sale and purchase of land has been made, conditioned upon the election of the vendee to take by a given day, the vendor may waive performance to the day, and close the trade under the contract.

6. LIEN. *Not lost. When.* An express lien on land for the purchase money, retained on the face of a deed of conveyance or by the decree of the court under which the land is sold, is equivalent to a mortgage lien, and is not lost by recovering judgment upon the purchase notes, and issuing execution thereon.

7. LIEN. *Vendor and vendee. Levy and sale.* An attachment lien on land contracted to be sold, levied on as the property of the vendee, is subject to the payment of the purchase money, and a similar levy on the land as the property of the vendor reaches nothing, he holding the legal title in trust for the vendee.

FROM WASHINGTON.

Appeal from the Chancery Court at Jonesborough. H. C. SMITH, Ch.

JAMES COMFORT for Exchange & Deposit Bank.

W. M. BAXTER for Commercial Bank.

CHARLES R. VANCE for Bank of Bristol.

H. H. INGERSOLL for Blair's estate.

LUCKEY & YOE and J. P. EVANS for Meeks' estate.

J. B. HEISKELL for McKinney's estate.

COOPER, J., delivered the opinion of the court.

The litigation in this case is somewhat narrowed by the report of the Referees, and the exceptions filed thereto. It will only be necessary to state so much of the case as will enable us to decide the exceptions. The defendant, Evans, claims under the Blairs, and his interest need not be specially noticed.

The Embreeville Iron Works property, embracing about 40,000 acres of land, was owned by the defendants, the Blair Brothers, McKinney's trustees, and Lyle, in the following proportions: The Blairs ten and one-half twelfths; McKinney's trustees one-twelfth, and

Lyle one-half of one-twelfth. The property was in litigation in the chancery court, and was by a decree of that court ordered to be sold. The parties interested sold their shares severally to the defendants, C. W. Bradley & Co., at the rate of $60,000, the price of the shares of the Blairs being $52,500; of the share of McKinney's trustees $5,000, and of the half share of Lyle $2,500. Bradley & Co. executed their notes for the purchase-money, dated December 31, 1869, for various amounts and falling due at different times. The notes for the McKinney share were made payable to the trustees, while the notes for the residue of the property were made payable to the clerk and master of the chancery court. The sale was reported to the court, and confirmed at the May term, 1870, a lien being expressly retained on the land by the decree of confirmation for the payment of the purchase-money. The Blairs were indebted to the McKinney trustees in a large amount, which was a lien on the share of the Blairs in the land, and, by agreement of these parties, one of the notes of Bradley & Co., being a note for $6,916.66, given for the shares of the Blairs in the land, was assigned to McKinney's trustees, and received by them in satisfaction of their said debt, with an express provision, embodied by consent in a decree in the cause, that this note should be entitled to priority of satisfaction out of the purchase-money due from Bradley & Co. for the shares of the Blairs in the land. The Blairs were also indebted to the defendant, John F. Smith, in the sum of $6,134.69, and the Referees find that, by a

decree in the cause, a lien was declared in favor of Smith for this sum "on the purchase-money due the Blairs by the terms of said sale."

In this situation of affairs, Bradley & Co., on the 30th of July, 1873, made a conditional sale of the property thus bought to the defendants, Wylie, Knevals & Co., which contract was reduced to writing, and afterwards modified or changed by a new contract in writing about September 17, 1873. By the terms of the contract, so far as they can be gathered from the pleadings and proof, the contracts themselves not being produced, Wylie, Knevals & Co. had at first agreed to advance a certain sum of money to Bradley & Co. to meet pressing demands, and had the option of taking the property at the price of $180,000. Afterwards, by the modification of the contract, the option of taking the property was still reserved to Wylie, Knevals & Co. at the price of $180,000, by giving notice to Bradley & Co., "as set forth in said agreement of July 30, 1873." And the contract adds, "the provisions of said agreement in that behalf and in respect to the payment of interest are still continued in force, it being agreed that the whole of the purchase money, $180,000, shall draw interest at seven per cent. from August 1, 1873. * * In case the parties of the first part shall take the said property, the amounts hereinbefore mentioned as paid to John A. McKinney and others, executors and trustees, and to John F. Smith, and Robert L. Blair Brothers, and the aforesaid advance to the parties of the second part, with interest at seven per cent.

on said several sums, shall be credited upon and deducted from the gross amount of the purchase-money of said property."

· It appears from the pleadings and proof that Wylie, Knevals & Co. had, under the original con-- tract, executed their notes to C. W. Bradley & Co. on different days and for various amounts, in the sum of $39,000. Three of these notes were dated July · 31, 1873, and made payable at ninety days, for $5,000 each. Another of the notes was dated August 5, 1873, at sixty days, for $9,000. The dates of the other notes do not appear, but from the periods when they are shown to fall due, it may fairly be inferred that they were executed about the same time with those mentioned. Bradley & Co. endorsed these notes, and raised money upon them. The complainant, the Exchange and Deposit Bank of Knoxville, discounted the $9,000 note, and two of the $5,000 notes above described. The complainant, the Commercial Bank of Knoxville, discounted others of these notes to the nominal amount of $15,000. And the Bank of Bristol, the complainant in an original attachment bill consolidated and heard with the bill of the other banks, and a defendant to the latter bill, and the cross-bill of the McKinney trustees, discounted the note of Bradley & Co. for $5,400, and took as collateral security the third of the $5,000 notes of Wylie, Knevals & Co., above described. The Referees find as a fact, to which finding there is no exception, that all of these notes of Wylie, Knevals & Co. were discounted, or taken as collateral by the banks.

in the months of July and August. No part of these notes has ever been paid, either by Bradley & Co., or Wylie, Knevals & Co.

The Referees find that out of the money thus raised by Bradley & Co., they paid, on September 15, 1873, to the McKinney trustees, $16,877.55, the payments including the amounts due to the trustees for their share of the land, and the note which had been transferred to them by the Blairs. The sum thus paid also included the amount due upon a separate judgment of the trustees against Bradley & Co. The Referees further find, that on the same day the said trustees transferred and assigned, by the consent of Bradley & Co., " all their interest in and lien upon said (iron works) property," to Wylie, Knevals & Co. They further find that McKinney, at or before the assignment above, surrendered to Bradley & Co. their note for $6,916.66, assigned to McKinney as aforesaid.

The Referees also find that Bradley & Co., out of the money raised by them from the banks, paid to John F. Smith, on September 16, 1873, $6,355.25, being the balance in full due him from the Blairs, and which was declared a lien on their interest in the iron works property, or the proceeds of the sale thereof, and that Smith thereupon, by the consent of Bradley & Co., transferred and assigned his said lien to Wylie, Knevals & Co.

In making the payment to the McKinney trustees, the Referees find that Bradley & Co. drew a draft, dated August 15, 1873, at ninety days, on the Ex-

change and Deposit Bank against the proceeds of the notes discounted by that Bank for $5,000; that this draft was accepted by the bank, and received by John A. McKinney, the active trustee, as a payment; and that this draft was not paid, the bank having suspended. Afterwards, the bank paid upon the draft April 5, 1875, $1,608.33.

On September 17, 1873, Bradley & Co. conveyed all their interest in the iron works property to a trustee in trust to secure a note of even date, due February 1, 1874, executed by them to Wylie, Knevals & Co. for $21,773.45, with power of sale if the note was not paid at maturity.

The present litigation was commenced on November 7, 1873, by the Bank of Bristol filing a bill, based on the $5,000 note of Wylie, Knevals & Co., which they had received as collateral, against Wylie, Knevals & Co. and Bradley & Co., praying an attachment to attach the interest of Wylie, Knevals & Co., as non-residents of the State, in the iron works property, " under a deed of trust executed by Bradley & Co. for their benefit, or otherwise," and for general relief. The attachment was levied the next day upon " all the right, title, claim or interest" that Wylie, Knevals & Co. " have in and to the property mentioned and described " in the deed of trust made by Bradley & Co. for the benefit of Wylie, Knevals & Co.

On February 3, 1874, the Commercial Bank of Knoxville and the Exchange and Deposit Bank of Knoxville filed a bill against Bradley & Co., Wylie, Knevals & Co., the Bank of Bristol, the Blairs,

Smith, the trustee under the deed of trust of Bradley & Co., of September 17, 1873, and John A. McKinney as an individual. The bill was based upon the notes which had been discounted by these banks as above explained, and asked for an attachment of the iron works property. The prayer was for a decree adjusting and settling all questions of priority, subrogation, and equity of the several parties, for a sale of the property, etc. The attachment was levied on "all the right, title, claim and interest that C. W. Bradley & Co. have in the Embree Iron Works property," describing it. The bill was answered by the Blairs and the Bank of Bristol, and taken for confessed against the other defendants.

On November 26, 1873, John A. McKinney moved the court, upon affidavit, to set aside the *pro confesso* order taken against him, and that he be made a defendant in his character of executor and trustee of the will of John A. McKinney, deceased, and permitted to answer and file a cross-bill to assert the rights of the trustees under that will. The chancellor granted the application, and McKinney filed an answer and cross-bill, the main object of the cross-bill being to set aside the assignment of September 15, 1873, as being without consideration, and made for a purpose which failed. This bill was answered by the Blairs and the Bank of Bristol, and taken for confessed against Bradley & Co. and Wylie, Knevals & Co. The other trustees of the McKinney will were afterwards made parties complainant to this bill by amendment.

The Referees find that Wylie, Knevals & Co. gave Bradley & Co. written notice on October 1, 1873, that they would take the iron works property "as per agreement, dated September 17, 1873." They further find that the notes of Wylie, Knevals & Co. were discounted and taken on the personal standing of the parties thereto, and that there was no contract or understanding that their interest in the iron works property was to be, in any manner, bound.

The chancellor, upon final hearing, set aside the assignments of Smith and McKinney to Wylie, Knevals & Co., and ordered the iron works property to be sold, the proceeds, after the payment of costs, to be applied, first, to pay the McKinney trustees the balance due them for their share of the property; secondly, to pay the banks to the extent of the balance of the amounts secured to McKinney and Smith; thirdly, to the Blairs to the amount of their debts secured by the decree of sale to Bradley & Co.; and lastly, the balance to Bradley & Co. The chancellor gave the banks severally a decree on their claims against Wylie, Knevals & Co. and Bradley & Co. From this decree the Blairs, and Evans, who stands in the same attitude, appealed.

The Referees were of opinion that the action of the chancellor in setting aside the *pro confesso* order against McKinney was erroneous, and that the transfers of Smith and McKinney to Wylie, Knevals & Co. were valid, but the rights thus acquired were subordinate to those of the Blairs. They were further of opinion that Wylie, Knevals & Co., by their notice

to Bradley & Co., of October 1, 1873, exercised the option given them by the contracts of July 30 and September 17, 1873, and became purchasers of the iron works property, their previous advances being thereby made payments *pro tanto* on the purchase price. They are of opinion that the Bank of Bristol is entitled to a certain priority over the other banks, and that whatever recovery the Exchange and Deposit Bank may be entitled to should inure first to the benefit of the McKinney trustees to the extent of the unpaid part of their accepted draft. They order the property to be sold, and the proceeds distributed:

1. To pay the Blairs the amount due them out of the proceeds of their shares.

2. To pay the costs of the cause.

3. To pay out of any balance, after paying the Blairs and costs, and out of the proceeds of the Mc-Kinney share, the amount due the Bank of Bristol.

4. To next satisfy amount due Exchange and Deposit and Commercial Banks.

5. Then Bradley & Co. are entitled to balance of purchase-money due them from Wylie, Knevals & Co.

6. Any surplus to go to Wylie, Knevals & Co.

The Referees, of course, recommend an affirmance of the chancellor's decree in favor of the banks, on the notes held by them, against Wylie, Knevals & Co. and Bradley & Co., and say that the Lyle interest in the property is not to be affected by the decree.

The Exchange and Deposit Bank, the Commercial Bank, and the McKinney trustees file exceptions to the report of the Referees.

The exception which requires first to be noticed is that to the finding of the Referees, that the chancellor erred in setting aside the *pro confesso* order against J. A. McKinney, and allowing him, as the executor and trustee of the will of John A. McKinney, deceased, for himself and the other executors and trustees, afterwards added as co-complainants, to answer the bill of the Knoxville banks, and to file a cross-bill. The record shows that the Blairs alone excepted to the action of the chancellor in this matter, and the Referees were, therefore, in error in recommending generally a reversal of what had been done. At most, the action of the chancellor could only be impeached in so far as it affected the interest of the Blairs, leaving the proceedings in full force as to the other parties who have never objected. But, curiously enough, it was to the interest of the Blairs to sustain the chancellor, for the rights of the banks as against the Blairs depended upon the validity of the assignment by the trustees of their debts and liens to Wylie, Knevals & Co., and the object of the answer and cross-bill of the trustees was to show that their assignment was without consideration, because the debt had been paid, as far it was paid, by Bradley & Co., and that the purpose of the assignment had failed. Moreover, the Blairs, being defendants, could not object to an order of court, made with the assent of the complainant Banks, setting aside the *pro confesso* against a co-defendant, making new parties defendant, and allowing them to make defense. It appears, also, that the interest in the

19—VOL. 15.

subject-matter of litigation was not in John A. Mc-Kinney as an individual, but in the executors and trustees in the will of John A. McKinney, deceased. These trustees were necessary parties to the suit, and were · properly permitted, with the assent of the complainants, to be made parties, and to assert their right. This exception to the report of the Referees is therefore well taken.

Treating the trustees as before the court, it is clear that they have no interest in the matters of litigation, except as to so much of the consideration of their share of the iron works property as remains unpaid, if any.  For they admit that the note of Bradley & Co., which they took from the Blairs, and which was a lien on the share of the Blairs, was paid by Bradley & Co., and this fact is admitted both by Bradley & Co., and Wylie, Knevals & Co., by allowing the cross-bill to be taken as confessed against them.  The proof establishes, moreover, and so the Referees have found, that this note was paid by Bradley & Co., and was surrendered to them "at or before" the assignment of September 15, 1873. All that the trustees can claim in this controversy is the unpaid balance of the purchase price of their share of the land, for which, as the evidence clearly shows, they took the draft of Bradley & Co., of August 15, 1873, on the Exchange and Deposit Bank. But the chancellor and the Referees both came to the conclusion, in substance, that this balance is unpaid, is a lien on the trustees' share of the land, and that when collected, it should go to the trustees.  The

banks did not appeal from the chancellor's decree, nor do they except to this part of the report of the Referees.   And the Blairs have no interest in the question, for they have only a lien for unpaid purchase-money on their shares of the land, the shares of the tenants-in-common or co-owners having been sold severally: *White* v. *Blakemore,* 8 Lea, 49.   This is the conclusion of the Referees, as shown by their disposition of the proceeds of the sale of the iron works property.

In this view, the Lyle share not being in controversy, the only questions remaining are the relative rights of the Blairs on the one side, and of the banks on the other, and of the banks as between themselves.

The Blairs, under the decree confirming the sale of the iron works property, have a lien on their share of the property, ten and a half-twelfths, for so much of the purchase-money of that share as may remain due and unpaid by Bradley & Co.   By the decree the note of Bradley & Co. for $6,916.66, transferred to McKinney's trustees, was first to be paid.   And by a decree in the case of Smith against the Blairs, John F. Smith was given a lien on the share of the Blairs for $6,134.69, with interest from July 6, 1872. The contention of the banks is that these debts of the trustees and Smith were paid on the 15th and 16th of September, 1873, by Wylie, Knevals & Co., and were thereupon assigned to them, together with the liens reserved for their payment.   The contention of the Bank of Bristol is, that it acquired a right to

priority of satisfaction out of the interest of Wylie,.
Knevals & Co., acquired by these assignments, by vir-
tue of their attachment of November 8, 1873. The
contention of the other two banks is that Wylie,
Knevals & Co. took these assignments to secure them
for so much money advanced by them to Bradley &
Co., and that the banks, by virtue of the fact that
these debts were actually paid by the money advanced-
by the banks on the notes of Wylie, Knevals & Co.,
are entitled to be subrogated to the rights of Wylie,
Knevals & Co., all of the banks to be " upon an
equal footing." The contention of the Blairs is that
the debts in question were paid by Bradley & Co.
before the assignment, whereby they became extin-
guished. And further, that Wylie, Knevals & Co.
exercised the option of becoming purchasers of the
iron works property, under their contracts with Brad-
ley & Co., whereby their advances, as expressly pro-
vided in the contracts, became mere payments on
the property, to be " credited upon and deducted from
the gross amount of the purchase-money." There would,.
in this view, be nothing for the banks to be subro-
gated to.

The Referees, having excluded from their consid-
eration the answer and cross-bill of the McKinney
trustees, and the proceedings thereunder, came to the
conclusion that the debts of Smith and the trustees
were paid at the time of the assignment. But this
conclusion of fact is clearly erroneous when we look
to the whole record, as we are compelled to do after
sustaining the exception to that part of the Referees'

report.    The contract between Bradley & Co. and
Wylie, Knevals & Co., of July 30, 1873, appears to
have been an agreement by which the latter firm were
to advance money to the former firm to meet press-
ing demands, in consideration of which the New York
firm were to have the option until October 1, 1873,
to buy the iron works property at the price of
$180,000.    The money was advanced by the execution
of notes to be used for the purpose of raising the
required funds.    These notes, the Referees find, were
used during the months of July and August, and the
proceeds were no doubt promptly disbursed in the
payment of the most pressing debts.    The testimony
of McKinney and Bradley is to this effect, and Mc-
Kinney proves that he was paid by the drafts or
checks of Bradley & Co. on the Knoxville banks.
He further testifies that, at the urgent solicitation of
C. W. Bradley, and upon his representation that the
banks could not advance all the money at once, he
agreed that other debts might be first paid, and that
he would receive the draft of Bradley & Co. on the
Exchange and Deposit Bank, at ninety days, for $5,000
on his debt.    The proof shows that this draft is
dated August 15, 1873, and although Bradley long
afterwards, in waiving the necessity of demand and
notice, states that it was drawn on September 15,
there can be little doubt that it was drawn when
dated, and that the money raised on the notes was
paid out before September 15.

   About September 15, 1873, the contract between
Bradley & Co. and Wylie, Knevals & Co. was modified.

The object of the modification was, as the circumstances show, to vest Wylie, Knevals & Co., with all the interest of Bradley & Co., in the iron works property acquired by the use of the money raised on the notes of Wylie, Knevals & Co. The mode adopted by Bradley & Co., who alone, by C. W. Bradley, were active in the matter, was to take the assignments of the McKinney trustees and Smith for their liens on the property, and to execute a trust conveyance of the property by themselves to secure the residue of the money raised on the notes. The notes, it will be remembered, were for $39,000. The debt secured by the deed of trust of Bradley & Co., amounted to $21,773.45. The debt of McKinney, as recited in the assignment, is $16,877.53, and of Smith $6,355.25. The aggregate of these sums exceeds the nominal amount of the notes by several thousand dollars, and one of the debts recited in the McKinney assignment was an individual debt of Bradley & Co., having no connection with the sale of the iron works property. It is obvious, therefore, that the plan resorted to was somewhat crude, and crudely carried out.

Be this as it may, we think it is clear that these debts had all been paid, so far as they were paid, by Bradley & Co., before the making of these assignments. This is proved by McKinney and Bradley as to the debts of the trustees. There is no direct proof in relation to the Smith debt, except that Bradley says he paid it before he made a payment of $5,000 on the McKinney debt. But the date and amount

of that debt are shown, and the assignment is of the whole of it, as if paid at the time. The actual debt, however, at that time, with interest, would have been a little over $6,600, whereas, the debt, as recited, is only $6,355.25. The inference would be that it had actually been paid before the assignment. If these debts were in fact paid by Bradley & Co., as the Refereess find, and before the assignments, they would have been extinguished, and could not be revived to the detriment of the Blairs. It is conceded that the payments to McKinney should be first applied to this debt.

The proof is conclusive that Wylie, Knevals & Co. did exercise, under their contracts with Bradley & Co., the option of taking the iron works property on October 1, 1873. The notice in writing was filed, and proof of the signatures waived by the parties. It is argued that as the notice purports to be dated in New York on the very last day for exercising the option, the court will judicially know that it could not be given in Tennessee on the same day. But, although apparently executed in New York, *non constat,* that it was not in fact executed in Tennessee, and even if written in New York on the day of its date it may have been delivered to one of the other contracting parties in that city on the same day. Moreover, the vendors might waive performance to the day, and close the trade under the contract. The testimony leaves no doubt that the notice was accepted by Bradley & Co. as sufficient.

It is further argued, on behalf of the banks, that

as soon as the assignments were accepted, their right to subrogation at once accrued, and could not be affected by any thing done afterwards. But Wylie, Knevals & Co. took the assignments, as they did the deed of trust of Bradley & Co., under the contract of September 17, 1873, with the express stipulation that if they exercised their election, and became the purchasers of the property, the amounts paid to Smith, the McKinney trustees and the Blairs, as well as the advances to Bradley & Co., should become payments on the purchase price, and credited accordingly. After election, Wylie, Knevals & Co. could not enforce these debts, nor any liens taken for their security, and a creditor of theirs cannot, in the absence of contract, stand in any better situation.

All of the exceptions to the Referees' report are met by the foregoing remarks and conclusions except one. The Blairs took judgments in the case in the chancery court on the notes of Bradley & Co., given for their interest in the iron works property, and sued out execution thereon. It is insisted that this was a waiver of their vendor's lien. But it is a vendor's equity or lien, which exists by law after the vendor has parted with the title, that may be waived. An express lien retained by deed, or by a decree under which land is sold, is equivalent to a mortgage, and is not affected by the recovery of judgment on the purchase notes, and issuance of execution thereon: *Stephens* v. *Greene County Iron Company*, 11 Heis., 71; *Hines* v. *Perkins*, 2 Heis., 395; *Byrns* v. *Woodward*, 10 Lea, 444; *Mulherrin* v. *Hill*, 5 Heis., 58.

The result is that the Blairs are entitled to subject their ten and a half shares of the iron works property to the satisfaction of the unpaid purchase-money due to them from Bradley & Co., free from the debts and liens of John F. Smith and the McKinney trustees for any part of that purchase only. The McKinney trustees will be entitled to subject their one share of the property to the satisfaction of the balance of purchase-money due to them from Bradley & Co. Any surplus of this share will be applied to the reimbursement of so much of the purchase-money of the share as may have been paid by the Exchange and Deposit Bank, with interest. The banks take nothing by way of subrogation to the rights of Wylie, Knevals & Co. The Bank of Bristol has obtained by its attachment the interest of Wylie, Knevals & Co. in the iron works property, subject to the payment of the residue of the $180,000 purchase-money, with interest. The Knoxville banks take nothing by their attachment, Bradley & Co. holding the legal title in trust for the vendees, and being only entitled to the unpaid purchase-money with a lien therefor as an incident. The attachment was levied on the land, not the purchase-money: *Stephenson* v. *Yandle*, 3 Hayw., 109; *Irvine* v. *Muse*, 10 Heis., 477; *Ament* v. *Brennan*, 1 Tenn. Ch., 431.

The chancellor's decree will be reversed, and a decree entered in accordance with this opinion, which modifies the report of the Referees. The costs of the entire cause will be paid first out of the proceeds of the sales of the shares of the Blairs and

the trustees, these shares bearing the burden of the costs proportionately. The banks are entitled to judgments on their° respective demands against Wylie, Knevals & Co. and Bradley & Co., and recovering these judgments at the same time, they are entitled to have ratably applied to their satisfaction any surplus proceeds of the sales of the shares above mentioned, after paying costs and the purchase-money debts, as hereinbefore directed.